IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JALIL WILLIAMS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 16-1134 |
| | : | |
| JOSEPH CARUSO | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                              **February 9, 2017**

Defendant Joseph Caruso moves for summary judgment of Plaintiff Jalil Williams's malicious prosecution action,[1] asserting Williams's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and/or collateral estoppel, and that even if Williams's claim is not barred, the malicious prosecution claim would still fail as a matter of law. Because the Court finds Caruso's success in this action would necessarily invalidate at least part of his state-court probation revocation and sentence, this action is barred by *Heck*. The Court will grant summary judgment and dismiss Williams's claim against Caruso without prejudice.

## FACTS[2]

Williams is serving a 9-18 year sentence at State Correctional Institution-Benner Township arising out of his probation revocation occurring after he was arrested by Caruso. On May 1, 2012, Caruso observed Williams riding his bicycle the wrong direction on a street and determined Williams's was violating the Philadelphia Motor Vehicle Code. At some point

---

[1] In addition to malicious prosecution, Williams's Complaint alleges claims for false arrest, unreasonable search and seizure, and due process violations. The parties agree, however, that the statute of limitations has run on all of Williams's claims except for the malicious prosecution claim, and therefore Williams has withdrawn those nonviable claims.

[2] In determining whether to grant summary judgment, the court "must view the facts in the light most favorable to the non-moving party, and must make all reasonable inferences in that party's favor." *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

thereafter, Caruso followed Williams to his residence and reported the incident over police radio.[3] Williams reached his home and went into his backyard. Caruso attempted to follow Williams into his residence and, finding the door locked, forcibly entered. Caruso instructed Williams to get on the floor, and Caruso handcuffed him. By this time, other police officers had responded to Caruso's radio call and had arrived at the residence. Caruso went into Williams's backyard, climbed a wall separating Williams's residence from his neighbors, and saw a firearm and magazine on the ground of the neighbor's yard. Caruso thereafter obtained permission from the neighbor to search the yard, finding the firearm and magazine, as well as a separate round of ammunition.

Williams was charged with three firearm offenses. At the time of the arrest, Williams was on probation. On May 10, 2012, a detainer was lodged against Williams because of his probationary status. During a probation revocation hearing,[4] the Philadelphia Court of Common Pleas found Williams was in violation of his probation. Specifically, the court found that Williams "was in possession of a 25 caliber firearm on the date in question," which was "an

---

[3] Williams and Caruso dispute the events between Caruso witnessing Williams riding his bicycle the wrong direction on the street and Caruso attempting to enter Williams's residence. According to Caruso, he called out to Williams several times, but Williams continued riding his bicycle, eventually getting off the bicycle to run toward his residence. Caruso further asserts that he saw Williams grab his waistband, leading Caruso to believe Williams may be in possession of a firearm. Williams asserts, on the other hand, that Caruso did not instruct Williams to stop, there was no encounter between Caruso and Williams, Williams did not get off his bicycle and begin running, and Williams did not grab his waistband.

[4] In Pennsylvania, such a hearing is referred to as a "Daisy Kates" hearing. *See Commonwealth v. Kates*, 452 Pa. 102 (1973).

additional technical violation of [Williams's] probation." Mot. Ex. G, at 50:2-5.[5] At sentencing

for the probation violation, the court stated:

> Needless to say, I found you had a gun and you have no right to have a gun. . . .
> The defendant has an extensive history of violating community supervision, fails
> to report to Court and absconded and violated the current matter on a total of 6
> occasions. He does not appear to be amenable to community supervision.

See *Pennsylvania v. Williams*, No. 666 EDA 2016, at *5 (Pa. Ct. Com. Pl. July 22, 2016)

(quoting N.T. 4/17/2013, at 8-10 (sentencing transcript)). As a result of the probation violations,

Williams received a sentence of 9-18 years of imprisonment. At trial on the gun possession

charges, however, Williams was acquitted by a jury. Williams thus remains incarcerated based

entirely on the probation revocation sentence.

On November 19, 2014, Williams filed a petition in state court challenging his sentence

under the Pennsylvania Post-Conviction Relief Act (PCRA). On July 22, 2016, the Court of

Common Pleas of Philadelphia County denied Williams's PCRA petition. Discussing the effect

of Williams's acquittal in relationship to his probation revocation sentence, the court explained:

> [T]he court did not violate the defendant solely on possession of a gun, but on the
> defendant's inability to abide by the rules and regulations concerning his parole
> and/or probation, as evidenced by his multiple violations. The VOP Court
> reviewed the Presentence Investigation Report prepared specifically for that
> hearing. The court noted that the defendant had eight violations of probation
> during this time, resulting in six revocations. Mr. Williams had denied using
> cocaine and yet submitted positive urine for that drug. There was no real history
> of violating community supervision, he is a chronic absconder, and he still needs
> drug treatment despite prior sentences that directed him to pursue treatment. The
> defendant had committed technical violations of his probation by failing to report
> as directed and using drugs. Accordingly, probation violations were established,
> despite the jury's subsequent acquittal of the gun charges and as such the action of
> the VOP Court was legitimate.

*Id.* at *4-5. Williams has appealed the denial of his PCRA, which petition remains pending.[6]

---

[5] The Court of Common Pleas noted Williams had also violated the terms of his probation by
testing positive for drug use on multiple occasions, walking away from a urine test, and failing to
report to scheduled office visits at the probation office. *Id.* at 29:4-30:21.

DISCUSSION

A motion for summary judgment shall be granted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." *Boykins v. Lucent Techs., Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000) (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is 'no genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Williams brings this civil rights action pursuant to 42 U.S.C. § 1983, asserting a malicious prosecution claim arising out of Caruso's arrest of Williams, which "was the cause of a technical violation of [Williams]'s probation, resulting in the confinement of" Williams. Compl. ¶ 34; *see also id.* ¶ 35 ("But for [Caruso]'s malicious prosecution . . . , [Williams] would not have been found in violation of probation and would not have suffered the resulting ongoing deprivation of freedom.").

Under *Heck v. Humphrey*, 512 U.S. 477 (1994), a plaintiff may not bring a § 1983 action where success in that action would implicitly call into question the validity of the plaintiff's state conviction or duration of sentence without first achieving a favorable termination of his available habeas remedies to challenge the underlying conviction. *Williams v. Consovoy*, 453 F.3d 173,

---

[6] At oral argument, the parties indicated uncertainty as to the status of Williams's PCRA petition. The Court notes, according to Williams's Superior Court of Pennsylvania docket sheet, that Williams appealed the denial of his PCRA petition in March 2016, which remains pending before the court. *See Pennsylvania v. Williams*, No. 666 EDA 2016 (Pa. Super. Ct. 2016).

177 (3d Cir. 2006); *see id.* ("It is well-settled that when a state prisoner is challenging the fact or duration of his confinement, his sole remedy is a writ of habeas corpus, not a § 1983 action." (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of the confinement or its duration.").

Because Williams remains incarcerated solely because of his probation violation, this Court must determine whether his success in this action would necessarily invalidate the revocation of his probation and consequent sentence. *See McBride v. O'Brien*, 646 F. App'x 277, 278 (3d Cir. 2016) (citing *Consovoy*, 453 F. 3d at 177) ("The *Heck* doctrine applies to probation revocations decisions."); *see also Crow v. Penry*, 102 F.3d 1086, 1087 (10th Cir. 1996) (holding *Heck* "applies to proceedings that call into question the fact or duration of parole or probation").

To succeed on a malicious prosecution claim under § 1983, a plaintiff must show: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Estate of Smith v. Marasco,* 318 F.3d 497, 521 (3d Cir. 2003). The central inquiry in a malicious prosecution claim turns on whether probable cause existed. *See Smith v. Borough of Pottstown*, No. 96-1941, 1997 WL 381778, at *9 (E.D. Pa. June 30, 1997) (collecting cases).

Likewise, a central inquiry in revoking a parolee's probation is whether there exists probable cause that the parolee has violated the terms of his probation. A parolee whose

probation is revoked must be accorded due process; specifically, he "is entitled to two hearings, one a preliminary hearing at the time of his arrest and detention to determine whether there is *probable cause* to believe that he has committed a violation of his parole, and the other a somewhat more comprehensive hearing prior to the making of the final revocation decision." *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (emphasis added).

This case presents an unusual issue, involving a civil rights plaintiff challenging his arrest which resulted in both his probation being revoked and his subsequent acquittal at trial. The Court finds some guidance from a similar case from this District, *Beaver v. Del. Cnty. Prob. & Parole*, No. 15-2784, 2016 WL 4366977 (E.D. Pa. Aug. 16, 2016). In *Beaver*, the plaintiff brought a false arrest claim arising out of his arrest for being in contact with a minor, a violation of his probation. *Id.* at *1. At his probation revocation hearing, the state court found the plaintiff had not violated his probation for being in contact with a minor, but instead found other probation violations justified revoking his probation. *Id.*[7] Based on those violations—that is, conduct outside of the initial cause of arrest—plaintiff was sentenced to 572 days imprisonment. *Id.*

The court found the plaintiff's § 1983 claim challenging the arrest was barred because it necessarily implicated his sentence stemming from the probation revocation. Even though the plaintiff had been initially arrested for contact with minors, the state "court found him in violation of rules other than 'contact with minors' and revoked his probation." *Id.* at *6. Nevertheless, because a false arrest claim requires establishing an arrest was made without probable cause, the court found the plaintiff's probation revocation, which required finding

---

[7] In *Beaver*, the court was ruling on Defendants' motions to dismiss; thus, the facts above were taken from plaintiff's complaint. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (directing a court considering a motion to dismiss to "accept all of the complaint's well-pleaded facts as true").

probable cause the plaintiff violated his probation, barred consideration of his false arrest claim. *See id.* at *7 ("[A] finding in this action that plaintiff's arrest was made without probable cause would necessarily invalidate the . . . judgment revoking plaintiff's probation. Moreover, the revocation of plaintiff's probation has not been reversed or invalidated . . . . Therefore, I will dismiss plaintiff's Fourth Amendment false arrest claim because it is barred by *Heck*.").

The same result is warranted here. *See Marshall*, 458 F. App'x at 180 ("An essential element of both a false arrest and a malicious prosecution claim is the absence of probable cause."). Like *Beaver,* the Court recognizes that Williams's probation was revoked for reasons outside of the conduct he was arrested for. Further, *Beaver*'s result applies more forcefully here, as the Court finds the cause of Williams's arrest, being in possession of a firearm, formed at least part of the basis of his probation revocation. *See* Mot. Ex. G, at 50:2-5 (finding Williams "was in possession of a 25 caliber firearm on the date in question. So it's an additional technical violation of my probation"); *see also Williams*, No. 666 EDA 2016, at *5 (quoting N.T. 4/17/2013, at 8-10 (sentencing transcript)) ("[Y]ou had a gun and you have no right to have a gun."); *id.* at *4-5 ("[T]he court did not violate the defendant *solely* on possession of a gun, but on the defendant's inability to abide by the rules and regulations concerning his parole and/or probation, as evidenced by his multiple violations." (emphasis added)).

In arguing against summary judgment, Williams asserts "the record plainly supports the conclusion that Caruso initiated proceedings against Williams without probable cause, and did so maliciously." Opp. at 10. But this conclusion would necessarily call into question Williams's probation revocation, which rested on the general conclusion that probable cause existed that Williams had violated his probation, and on the specific finding that Williams was in possession of a firearm. That Williams was ultimately acquitted of the firearms charges does not necessarily

affect the probation revocation sentence. *See Pennsylvania v. Tomczak*, 381 A.2d 140, 142 (Pa. Super. Ct. 1977) ("Because of the difference between a trial and a probation revocation proceeding, it is not a violation of constitutional rights for the revocation of probation to take place after the arrest but before the trial. And, if the probationer is later acquitted of those criminal charges, factual support of the earlier revocation of probation is not necessarily removed, and the revocation may still stand." (citation omitted)); *see also United States v. Chambers*, 429 F.2d 410, 411 (3d Cir. 1970) ("[P]robation may be revoked on the basis of conduct which falls short of criminal conduct."); *Bryant v. Jenkins*, 2006 WL 1373182, at *3 (D.N.J. May 15, 2006) (collecting cases) ("A parole board may revoke parole on the basis of an offense that violates the conditions of parole even if the parolee is never criminally charged with the offense, or if he is acquitted of the charges or the charges are dismissed before trial.").

Moreover, Williams is currently litigating the validity of his confinement through a PCRA petition. *See Williams*, No. 666 EDA 2016, at *3 ("The crux of the defendant's complaint is that is inherently unfair to sentence a defendant as result of a *Daisy Kates* hearing . . . when a subsequent trial found him not guilty of those charges."). Although the Court of Common Pleas rejected Williams's argument—finding the revocation of probation and subsequent sentence "legitimate," *id.* at 5—he has appealed the decision.[8]

Until Williams's sentence has been invalidated by the state court, "his sole remedy is a writ of habeas corpus, not a § 1983 action." *Williams*, 453 F.3d at 177; *see also Brown v. City of*

---

[8] Although not raised by the parties, the Court notes that permitting Williams to continue litigating this action may interfere with the resolution of his PCRA appeal, and it would thus be within the Court's discretion to abstain from exercising jurisdiction over this case. *See Addiction Specialists, Inc. v. Twp. Of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005) ("A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." (citing *Younger v. Harris*, 401 U.S. 37 (1971)).

*Phila.*, 339 F. App'x 143, 146 (3d Cir. 2009) ("A § 1983 claim based on an allegedly unconstitutional conviction or sentence does not accrue until the invalidation of that conviction or sentence. For that reason, when a § 1983 claim is dismissed under *Heck*, the dismissal should be without prejudice." (citations and quotations omitted)). Because Williams's malicious prosecution claim is barred by *Heck*, the Court will grant Caruso's motion for summary judgment and dismiss Williams's claim against Caruso without prejudice.

An appropriate order follows.

BY THE COURT:


   /s/ Juan R. Sánchez
Juan R. Sánchez, J.